RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0237P (6th Cir.)
File Name: 00a0237p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

FRANKLIN SANDERS,
　　　　　　*Petitioner,*

　　　*v.*

WILLIAM E. FREEMAN, JR.
and CHARLES BURSON,
　　　　　　*Respondents.*

No. 98-6512

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 96-02698—Julia S. Gibbons, Chief District Judge.

Argued: March 7, 2000

Decided and Filed: July 19, 2000

Before: BOGGS and COLE, Circuit Judges; and
ZATKOFF, District Judge.[*]

———————————

**COUNSEL**

**ARGUED:** Edwin Vieira, Jr., Manassas, Virginia, for
Appellant. Ellen H. Pollack, ASSISTANT ATTORNEY

———————————

[*] The Honorable Lawrence P. Zatkoff, Chief United States District
Judge for the Eastern District of Michigan, sitting by designation.

1

GENERAL, CRIMINAL JUSTICE DIVISION, Nashville, Tennessee, for Appellees. **ON BRIEF:** Edwin Vieira, Jr., Manassas, Virginia, Edward Witt Chandler, Mountain Home, Arkansas, for Appellant.  Ellen H. Pollack, ASSISTANT ATTORNEY GENERAL, CRIMINAL JUSTICE DIVISION, Nashville, Tennessee, for Appellees.

———————————

## OPINION

———————————

BOGGS, Circuit Judge.  The petitioner, Franklin Sanders, is a businessman who, prior to his conviction, worked as a retail dealer in Memphis, Tennessee selling gold and silver coins and bullion for cash.  He sought a writ of habeas corpus following his conviction for unlawfully depriving the State of Tennessee in its collection of sales tax revenues.  The district court denied Sanders's petition and granted summary judgment for the state.  We affirm.

## I

The following excerpt from the Tennessee Supreme Court's opinion affirming Sanders's conviction accurately summarizes the facts giving rise to his indictment.

In 1986, the [Tennessee] Department of Revenue discovered that [Sanders], who was not registered with the Department as a "dealer" [of coins and precious metals] under the sales tax statute, was advertising as a dealer in gold and silver bullion and coins and precious metals.  The Department also discovered that the state of Arkansas had obtained a judgment against [Sanders] for sales tax owed on the sale of gold and silver coins and bullion at his place of business in West Memphis, Arkansas.  While engaged in business in West Memphis, [Sanders] placed an advertisement in a Memphis newspaper, which stated: "[i]f you're a Memphis buyer, you save six percent sales tax on any purchase mailed to Tennessee." Soon after the state of Arkansas obtained its

judgment for $66,223.51 for sales tax due, [Sanders] moved his business to Memphis, where he operated under various trade names including "Franklin Sanders Moneychangers" and "Money for Metals."

In July 1986, an agent of the Department purchased several bars of silver from [Sanders] at his place of business in Memphis. [Sanders] did not file a monthly sales tax return for the month of July. In September 1986, when the agent bought several more bars of silver from [Sanders], he asked [Sanders] if sales tax was due on the transaction. [Sanders] responded that no sales tax was due because the defendant was purchasing the agent's Federal Reserve notes with silver. As a record of each transaction, [Sanders] gave the agent a "trade confirmation," which stated:

> [O]ur business legally is buying notes and paying for them in gold and silver. Our acceptance of Federal Reserve notes (the green paper you carry in your billfold) in exchange for gold and silver money is a function of our common law 'moneychanging' only, and is not an admission on our part, expressly or implicitly, that we recognize them as lawful or constitutional money.

A search of [Sanders's] business premises on September 18, 1986, by Revenue Department agents produced evidence of transactions in which the defendant had [been] paid a total of $945,610.69 for U.S. gold coins, U.S. silver coins, Krugerrands and silver bars. During the search, the agents also found evidence of a letter written by [Sanders] in which he discussed the applicability of the Tennessee sales tax on the transactions. The letter, which was written after the state of Arkansas had obtained its judgment against the defendant, included the following:

> George, I realize that Arkansas can register this judgement [sic] in Tennessee and I realize that they may be able to cause me some trouble, but I don't

own anything, nothing is in my name, I just have to hope that that is enough protection. As to the good sales tax people in Tennessee, I am no longer selling anything. Relying on the definition of Federal Reserve Notes at 12 U.S.C. 411, I am buying "obligations" and paying for them in lawful gold and silver money. This makes my invoices a bit hard to explain to my customers, but I think it will keep the State of Tennessee at bay.

*State v. Sanders*, 923 S.W.2d 540, 542 (Tenn. 1996).

Based on the facts recited above, on September 19, 1989, a grand jury issued a two-count indictment charging Sanders with (1) delaying the State by design in the collection of its lawful revenue from December 1, 1983, through November 1, 1986, and (2) depriving the State by design of the realization of its lawful revenue for the same period, both in violation of Tennessee Code Annotated (TCA) § 67-1-1440(d). The indictment alleged that, during the period charged, Sanders was selling gold and silver coins and bullion in Memphis without collecting sales tax as required by the Tennessee Code.

A jury convicted Sanders on both counts of the indictment, and a sentencing hearing was held on June 18, 1992. The trial court sentenced Sanders to one year of incarceration and ordered him to pay the state $73,000 in restitution. The court then suspended all but thirty days of the sentence, placed Sanders on probation for six years, and ordered him to complete 1000 hours of community service. The Tennessee Court of Criminal Appeals affirmed Sanders's conviction for *depriving* the State of revenue, but reversed his conviction for *delaying* the collection of revenue exceeding $5,000 on the grounds that the delaying conviction constituted double jeopardy. *State v. Sanders*, 1994 WL 413465 (Tenn. Crim. App. 1994).

The Tennessee Supreme Court granted Sanders's application for review and, on May 28, 1996, issued an opinion affirming his conviction and sentence as amended by

restitution, T.C.A. § 40-35-304(b) requires the court to request that documentation regarding the nature and amount of the victim's pecuniary loss be included in the presentence report. Although this information was not included in Sanders's presentence report, the Tennessee Court of Criminal Appeals properly concluded that the lack of documentation did not harm Sanders because the trial court held a sentencing hearing "to give [him] full consideration under the law regarding restitution." *State v. Moore*, 814 S.W.2d 381, 384 (Tenn. Crim. App. 1991).

Because Sanders does not dispute the amount of money at issue in each of the transactions documented in the record, and because we find as a matter of law that each of these transactions was taxable, we conclude that there was no constitutional error in the holding of the Tennessee courts that the evidence at trial supports restitution in the amount of $73,000. *See* T.C.A. § 40-35-401(d); *State v. Brown*, 832 S.W.2d 594, 595 (Tenn. Crim. App. 1992). Cf. *Daniel*, 956 F.2d at 543 (holding that, under Sixth Circuit law and certain enumerated provisions of the federal Internal Revenue Code, restitution in income tax evasion cases should be based solely on the amount of tax liability for which the defendant was convicted). Sanders points to no evidence or case law suggesting that the Tennessee courts erred in finding that the evidence at trial supported the amount of restitution ordered, or that his tax liability was calculated in a manner contrary to established federal law. As a result, he is not entitled to relief on this issue.

### III

Because Sanders has failed to satisfy the requirements for habeas corpus relief under 28 U.S.C. § 2254, we **AFFIRM** the district court's final judgment denying reconsideration and granting summary judgment for the state.

"intentionally," "knowingly," and "by design." The trial court also instructed the jury that Sanders's failure to file tax returns did not prove either his intent to evade taxation or his guilt on either of the charges listed in the indictment.

In *Estelle v. McGuire*, 502 U.S. 67 (1991), the Supreme Court held that jury instructions involving alleged state law error may not serve as the basis for habeas relief unless they have "so infused the trial with unfairness as to deny due process of law." *Id.* at 75. Although Sanders contends on appeal that the jury instructions were inadequate, he presents no evidence that the jury instructions did not adequately inform the jury of the level of *mens rea* necessary for conviction. Because Sanders has not met his burden of showing that the trial court's instructions on intent "so infused the trial with unfairness as to deny due process of law," the trial court's decision not to instruct the jury as Sanders requested is not contrary to federal law and he is not entitled to relief on appeal.

*Propriety of the Order Directing Petitioner to Pay $73,000 in Restitution*

In his final assignment of error, Sanders contends that, under Sixth Circuit law, the restitution order issued by the trial court "lacks a rational basis" in evidence and is excessive because it covers more than the "loss actually suffered" by the state. *United States v. Daniel*, 956 F.2d 540, 543 (6th Cir. 1992). Sanders's objections on this issue lack merit. As the Tennessee Court of Criminal Appeals noted in considering this issue de novo, the evidence presented at trial concerning Sanders's transactions clearly supports the trial court's order requiring him to pay restitution of approximately $73,000. The court correctly stated that "[t]he defendant disputed the taxability of [the] transactions [discussed at trial], but he did not dispute the amount of money involved in each of the exchanges."

Section 40-35-304(a) of the Tennessee Code specifically authorizes the sentencing court to impose restitution as a condition of probation. If the sentencing court orders

the court of appeals. In its opinion, the Tennessee Supreme Court specifically held that the sale of gold and silver coins and bullion for their intrinsic value as metals, rather than for their representative values as currency, constitutes a taxable sale of "tangible personal property" under Tennessee law. *See State v. Sanders*, 923 S.W.2d at 543. The court further held that Sanders's conviction did not violate due process, finding that, as a matter of law, the Tennessee sales tax provision gave him "fair warning" that the transactions to which he was a party were subject to state sales tax. *See ibid*.

Having exhausted all opportunities for review in the state courts, Sanders filed his petition for a writ of habeas corpus in the district court. The state filed a motion for summary judgment along with various supporting documents and, after considering Sanders's responses and cross-motions, the district court granted the state's motion on November 24, 1997. Sanders's motion for rehearing, which the district court construed as a Rule 59(e) motion to alter or amend the judgment, was denied and Sanders filed a timely notice of appeal to this court. On appeal, Sanders raises seven assignments of error in which he challenges various aspects of his conviction and sentence.

## II

Section 2254 of Title 28 of the United States Code creates a right to petition a federal district court for habeas corpus relief from a state conviction. Section 2254(a) provides that a petitioner may seek habeas relief if he is "in custody in violation of the Constitution or laws or treaties of the United States." Because Sanders was in custody at the Shelby County Correctional Center in Memphis, Tennessee when he filed his petition for habeas corpus on July 8, 1996, this court has jurisdiction over this case even though Sanders was not in custody at the time he filed this appeal. *See Carafas v. Lavelle*, 391 U.S. 234, 237 (1968) (stating that "[t]he federal habeas corpus statute requires that the applicant must be 'in custody' when the application for habeas corpus is filed" and holding that, because jurisdiction over a habeas corpus action

attaches at the time the petition is filed, the petitioner's incarceration at the time he filed his petition in the district court established federal jurisdiction over his habeas case despite his subsequent unconditional release from custody); *DePompei v. Ohio Adult Parole Auth.*, 999 F.2d 138, 140 (6th Cir. 1993) (holding that the court had jurisdiction over a petitioner who was on parole, a form of custody, when he filed his habeas petition in the district court).

### Standard of Review

This court reviews de novo the district court's grant of summary judgment for the state. *See Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.*, 96 F.3d 174, 178 (6th Cir. 1996). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c). To defeat a motion for summary judgment, the non-moving party must set forth specific facts sufficient to show that a reasonable factfinder could return a verdict in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Because Sanders's case was decided in the district court under 28 U.S.C. § 2254, this court must review the district court's decision in light of the standard of review for habeas corpus actions set forth in § 2254(d). Section 2254(d) provides that an application for a writ of habeas corpus "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

materially indistinguishable facts." *Williams*, 120 S. Ct. at 1523.

The evidence Sanders wished to admit consisted of statutory definitions and 19th-century Supreme Court cases dealing with commerce in gold and silver currency that would confuse jurors more than it would assist them in determining whether he had a good faith belief that he was exempt from taxation. In addition, the state courts correctly noted that the evidence Sanders wished to admit would merely be supportive, if not duplicative, of the information in his trade confirmations and in his testimony at trial. Because Sanders has not shown that the trial court's decision to exclude his evidence is contrary to federal law, he is not entitled to relief on appeal. With regard to his argument that his testimony alone was insufficient to inform the jury of his intent, the decision to credit testimony that a defendant did not willfully or intentionally commit an illegal act is a question of fact for the jury that was resolved against Sanders in this case. *See State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978), *superseded in part by statute as stated in State v. Blanton*, 926 S.W.2d 953, 958 (Tenn. Crim. App. 1996). Because he has presented no evidence that would allow this court to find, as a matter of law, that no rational trier of fact could have found him guilty beyond a reasonable doubt, he cannot prevail on this assignment of error.

### Erroneous Jury Instructions

Where a trial court's instruction "[is] a correct statement of Tennessee law, and it adequately cover[s] the subject matter contained in the special request . . . the trial judge commit[s] no error in declining to give the requested charge." *Shell v. State*, 584 S.W.2d 231, 235 (Tenn. Crim. App. 1977). In this case, Sanders requested that the jury be instructed that it could only convict if it found that he acted "feloniously" (i.e. "willfully") by committing a "voluntary, intentional violation of a known legal duty." The trial court denied Sanders's request, and opted instead to instruct the jury on the scienter element of the tax evasion charge by explaining the terms

relevant evidence may constitutionally be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403; Tenn. R. Evid. 403. Acknowledging Sanders's reference to the Ninth Circuit's decision in *Powell*, the Tennessee Court of Criminal Appeals noted in affirming Sanders's conviction that *Powell* states only that a court "*ordinarily* cannot exclude evidence relevant to the jury's determination of what a defendant thought the law was." *Powell*, 955 F.2d at 1214 (emphasis added). In this case, the trial court made a reasoned determination that the probative value of the evidence was substantially outweighed by the possibility of misleading the jury. In affirming the trial court's decision to exclude, the Tennessee Court of Criminal Appeals noted:

> We agree with the trial court's finding that the danger was too great that the jury would improperly consider such evidence for its validity or soundness as law, and not for its reflection upon the defendant's state of mind. In considering the entire record in this case, we are satisfied that the jury gained a complete and accurate understanding of the defendant's state of mind from the defendant's own testimony and from the trade confirmations which were entered into evidence. Even if it was error for the trial court to exclude the materials upon which the defendant claims to have relief, it was harmless beyond a doubt. *See* T.R.A.P. 36(b); Tenn. R. Crim. P. 52(a).

When reviewing a state court's evidentiary determination pursuant to § 2254, a federal appellate court may not grant a petitioner's request for relief simply because it would have decided the evidentiary question differently than the state court. We may only grant relief if Sanders is able to show that the Tennessee trial court's evidentiary rulings were in conflict with a decision "reached by [the Supreme] Court on a question of law or if the state court [decided the evidentiary issue] differently than [the Supreme] Court [did] on a set of

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d).

In its recent decision in *Williams v. Taylor*, 120 S. Ct. 1495 (2000), the Supreme Court resolved a disagreement among the federal appellate courts regarding the proper interpretation of the standard for habeas corpus relief set forth in § 2254(d)(1). In *Williams*, Justice O'Connor, stating the opinion of the Court on this point (*see id*. at 1516), discussed the language in § 2254(d) that outlines the degree to which federal habeas courts should defer to state court decisions. The Court held that, in order for the writ to issue, a state-court decision must be contrary to Supreme Court precedent in the sense that:

> [T]he state court arrive[d] at a conclusion opposite to that reached by this Court on a question of law . . . . [or] the state court confront[ed] facts that are materially indistinguishable from a relevant Supreme Court precedent and arrive[d] at a result opposite to ours.

*Williams*, 120 S. Ct. at 1519. As the Court went on to explain, to be entitled to habeas relief under § 2254(d), a petitioner must show that the state court's decision was "substantially different from the relevant precedent of [the Supreme] Court." *Ibid.*

Justice O'Connor elaborated further on the application of this standard with examples concerning a habeas petitioner's claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). *See id.* at 1519-20. She explained that habeas relief would be warranted on an ineffective assistance claim if the state court rejected the prisoner's claim because it imposed a different burden of proof on the petitioner than the Supreme Court had determined was proper or because, confronted with facts "materially indistinguishable from a decision of [the Supreme] Court," the state court "nevertheless arrive[d] at a

result different from [the Court's] precedent." *Id.* at 1519-20. She emphasized, however, that a "run-of-the-mill state-court decision applying the correct legal rule from [its] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Id.* at 1520. Thus, in the context of a claim for ineffective assistance of counsel under *Strickland v. Washington*, a "state-court decision on a prisoner's ineffective assistance claim [that] correctly identifies *Strickland* as the controlling legal precedent and, applying that framework, rejects the prisoner's claim . . . . [would] [q]uite clearly . . . be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, *even assuming the federal court considering the prisoner's habeas application might reach a different result applying the* Strickland *framework itself*." *Ibid.* (emphasis added).

Given the Supreme Court's interpretation of § 2254(d)(1) in *Williams*, this court should only grant Sanders's request for habeas corpus relief under this section if the Tennessee courts either failed to apply clearly established federal law to Sanders's claims, issued a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings," or denied his claims even though the facts of his case were "materially indistinguishable" from a case in which the Supreme Court granted relief. 28 U.S.C. § 2254(d).

In determining whether the Tennessee Supreme Court's decision affirming Sanders's conviction was "contrary to, or involved an unreasonable application of, clearly established federal law" under § 2254(d) and the Supreme Court's decision in *Williams*, this court is required to presume that the state court's factual findings are correct unless Sanders is able to establish certain enumerated circumstances. *See* 28 U.S.C. § 2254(e). Specifically, a federal habeas court may not hold an evidentiary hearing to consider issues of fact raised by a petitioner unless the claim for a hearing rests on one of the following grounds:

reached by [the Supreme] Court on a question of law . . . . [or that they] confront[ed] facts that are materially indistinguishable from a relevant Supreme Court precedent and [nevertheless] arrive[d] at a result opposite to [the Court's]." *Williams*, 120 S. Ct. at 1519. Because there is no evidence that the Tennessee trial court abused its discretion in admitting the challenged testimony, or that the Tennessee Supreme Court's decision affirming Sanders's conviction was "contrary to, or involved an unreasonable application of, clearly established federal law," Sanders is not entitled to relief on this assignment of error. 28 U.S.C. § 2254(d)(1).

### *Improper Exclusion of Evidence*

Sanders also asserts on appeal that the trial court committed prejudicial error when it refused to allow him to enter into evidence various legal materials supporting his "good faith" belief that his business transactions were not subject to state sales tax. Sanders contends that the trial court's refusal to admit this evidence prejudiced his case because a defendant's "subjective good faith belief, no matter how unreasonable, that he was not required to file a tax return," negates the defendant's culpability for tax evasion. *United States v. Powell*, 955 F.2d 1206, 1211 (9th Cir. 1991); *see also Cheek v. United States*, 498 U.S. 192 (1991) (noting that the government has the burden of proving that the taxpayer did not have a good faith belief or misunderstanding of the law).

Although Sanders relies on *Powell* and *Cheek* in an attempt to establish his right to a good faith defense, these cases are inapposite because they were decided not under Tennessee law, but under specific provisions of the federal Internal Revenue Code pertaining to income tax evasion. *See Cheek*, 498 U.S. at 201-02 (decided in accordance with 26 U.S.C. §§ 7201; 7203); *Powell*, 955 F.2d at 1211 (same). In addition, even if the Tennessee courts were to interpret their state revenue code in accordance with these cases, and even if the evidence of good faith that Sanders sought to present were relevant to his defense, there would be no due process violation, and thus no basis for habeas relief, because even

support an order of restitution in an amount greater than the statutory minimum required for indictment.

### *Improper Testimony at Trial*

Sanders contends on appeal that, because the jury could impermissibly impute his customers' investment intent to him, the trial court committed prejudicial error when it allowed his customers to testify that they did not intend to use the coins and bullion they purchased as currency. The Tennessee Rules of Evidence, which mirror the federal rules, provide in pertinent part that:

> All relevant evidence is admissible except as provided by the Constitution of the United States, the Constitution of Tennessee, these rules, or other rules of laws of general application in the courts of Tennessee.

*See* Tenn. R. Evid. 402. The rules define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401.

In considering whether the customers' testimony was relevant and, if so, whether its admission violated state or federal law, the Tennessee Court of Criminal Appeals found: (1) that Sanders's "trade confirmations" were not contracts so the parol evidence rule did not preclude the customers from testifying; (2) that Sanders had the opportunity through the trade confirmations and his own testimony to establish his intent in conducting the sales at issue and that it was therefore not error to permit his customers to testify as to their intent in conducting the same transactions; and (3) based on a "thorough examination of the record" there was "no reason to suspect that the jury imputed the customers' intent to the defendant." JA 218-220.

The Tennessee Supreme Court affirmed the appellate court's findings, and Sanders has presented no evidence that the state courts "arrived at a conclusion opposite to that

> (A) . . . (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

### *Sanders's Due Process Claims*

It is well established that a statute must give a defendant "fair notice that his contemplated conduct is forbidden." *United States v. Harriss*, 347 U.S. 612, 617 (1954). Specifically, an individual may not be prosecuted for violating tax laws when the statutory provisions at issue are "vague or highly debatable" or the governing law is "completely unsettled by any clearly relevant precedent." *United States v. Critzer*, 498 F.2d 1160, 1162 (4th Cir. 1974) (finding that a defendant who had been informed by a government agency that she would not be subject to taxation under an ambiguous provision of the tax code lacked the intent necessary to support a conviction for tax evasion). In *United States v. Mallas*, 762 F.2d 361 (4th Cir. 1985), another case involving the scope and application of an ambiguous tax law, the Fourth Circuit cited *Critzer* in holding that, "where the law is vague or highly debatable, a defendant – actually or imputedly – lacks the requisite intent to violate it." *Mallas*, 762 F.2d at 363 (citations omitted).

In challenging his conviction, Sanders relies heavily on *Mallas* and its progeny, arguing that the state of Tennessee failed to provide him with notice in the form of a judicial decision, regulation, or revenue ruling that his business transactions were subject to state sales tax. In the *Mallas* line

of cases, however, the reviewing courts found that the complex statutory provisions at issue were legitimately subject to contrary interpretations that were both reasonable and well-supported.  In this case, both the Tennessee court of appeals and the federal district court agreed that the statutory provision at issue was not ambiguous, and noted that other courts that have interpreted similar statutory provisions have all agreed that transactions of the kind at issue in this case are subject to state sales tax.  *See, e.g.*, *State v. Sanders*, 923 S.W.2d 540, 544 (Tenn. 1996) (affirming Sanders's conviction and noting that "the relevant provisions of Tennessee's Code are rather clear in their applicability to the defendant's transactions"); *see also Association of Ala. Prof'l Numismatists, Inc. v. Eagerton*, 455 So. 2d 867 (Ala. Civ. App. 1984); *Revenue Cabinet v. Saylor*, 738 S.W.2d 426 (Ky. Ct. App. 1987); *Michigan Nat'l Bank v. Department of Treasury*, 339 N.W.2d 515 (Mich. Ct. App. 1983); *Scotchman's Coin Shop, Inc. v. Administrative Hearing Comm'n*, 654 S.W.2d 873 (Mo. 1983) (en banc).

The provisions of the Tennessee Code at issue in this case, TCA §§ 67-6-201(1) and 67-6-202, provide that anyone who "[e]ngages in the business of selling tangible personal property at retail in [Tennessee]" must pay sales tax on those transactions.  Section 67-6-102(29) then defines "tangible personal property" as "personal property, which may be seen, weighed, measured, felt, or touched, or is in any other manner perceptible to the senses. . . . [It] does not include stocks, bonds, notes, insurance, or other obligations or securities." Section 67-1-1440(d) of the Code makes it a felony for:

> any person to delay, hamper, hinder, impede, obstruct or thwart the state of Tennessee in the collection of any of its lawful revenue, or to deprive the state of the realization of such revenue at the time it is lawfully entitled thereto by any artifice, design, false weight or measure, stratagem, or by the falsification of any record, report or return required by law.

*Association of Ala. Prof'l Numismatists, Inc. v. Eagerton*, 455 So.2d 867 (Ala. Civ. App. 1984) (holding that a state sales tax on coins purchased for investment purposes did not impinge on Congress's authority to issue currency).

With regard to Sanders's contention that the State did not sufficiently prove that the amount of sales tax he owed exceeded $5000, the following transactions involved the sale of coins and bullion as tangible personal property and served as the basis for Sanders's conviction and sentence:

| Customer Name | Transaction Date | Subject of Trade | Amount Paid | Tax Rate | Alleged Tax Due |
|---|---|---|---|---|---|
| Batey | 3/84 | Silver Coin | $5,000.33 | 6.75% | $337.52 |
| Batey | 4/84 | Krugerrands | $8,020 | 7.75% | $621.55 |
| Batey | 5/85 | Silver Rounds | $510 | 7.75% | $39.53 |
| Batey | 8/84 | Silver Bars | $2,430 | 7.75% | $188.33 |
| Batey | 12/84 | Silver Bars | $2,322 | 7.75% | $179.96 |
| Web | 1/84 | Gold Coin | $11,562.80 | 6.75% | $780.49 |
| Web | 7/84 | Gold Coin | $7,904 | 7.75% | $612.56 |
| Web | 10/84 | Gold Coin | $26,437.50 | 7.75% | $2,048.91 |
| Thompson | 1/85 | Silver Bars | $12,000 | 7.75% | $930 |
| Verhaeghe | 11/84 - 5/85 | Krugerrands | $864,078.06 | 7.75% | $66,966.05 |
| Smith | 7/86 | Silver Bars | $3,432 | 7.75% | $265.98 |
| Smith | 9/86 | Silver Bars | $1,914 | 7.75% | $148.34 |
| **TOTALS** | | | **$945,610.69** | | **$73,119.22** |

Sanders's "trade confirmations," or receipts, for each of the above transactions show that the coins and bullion sold were sold on the basis of each item's precious metal weight, rather than on the value of the item as currency.  Because the sales were based on the items' intrinsic, rather than face, values, each transaction listed above was subject to sales tax, and the lower courts did not err in finding that the evidence presented at trial concerning the above transactions was sufficient to

Sanders responds to this logic with a hypothetical in which the intrinsic value of a $1 silver coin is equal to its face value because the price of silver is low, and notes that in such a case the intrinsic-value theory would make taxable even an otherwise non-taxable currency-for-currency exchange.[3] Whether it would be reasonable to treat such a transaction as a taxable sale by, for example, imputing an investment motive to the buyer is an interesting question, but beyond the scope of our inquiry in this case because the record clearly indicates that all of Sanders's transactions involved the exchange of paper currency for coins sold not according to their face values, but according to their weights as precious metals, which far exceeded their face values as currency. The transactions at issue here, like a transaction in which a customer pays $5 cash for a silver coin worth only $1 because the customer needs the coin to satisfy a contract specifying payment only in a specific silver coin, involved the sale of coins for their intrinsic, rather than face, values, and were therefore taxable under Tennessee law. The possibility that the price of a coin as determined by its precious metal content could equal its face value as currency is not only slight, it is irrelevant to our inquiry here because it does not render the Tennessee statute objectively ambiguous or otherwise absolve Sanders of his tax liability for the transactions on record in this case.

Although Sanders may be correct that a merchant cannot always tell whether his customers intend to use the coins they purchase as currency or not, any dealer who sells coins based on their intrinsic value rather than their face value is properly subject to sales tax under the statute. Sanders's hypotheticals notwithstanding, the evidence adduced at trial proves that the transactions that served as the basis for Sanders's conviction involved the purchase of gold and silver coins and bullion not for use as currency, but for investment or numismatic purposes, and as such were subject to state sales tax. *See e.g.*,

---

[3] As demonstrated by the hypotheticals set forth in Sanders's briefs, even the most clearly written statute could not anticipate every situation that might arise between a buyer and seller of coins and precious metals.

Although the Tennessee Code does not define "intangible" (i.e. non-taxable) personal property, intangible property as used in the law of taxation means "such property as has no intrinsic and marketable value, but is merely the representative or evidence of value, such as certificates of stock, bonds, promissory notes, copyrights, and franchises." *Sanders*, 923 S.W.2d at 542 (quoting Black's Law Dictionary 809 (6th ed. 1990)).

Notice of potential tax liability may be provided by "authoritative constructions sufficiently illuminating the contours of an otherwise vague provision." *Dombrowski v. Pfister*, 380 U.S. 479, 490-91 (1965). Although the Supreme Court stated in *United States v. Lanier* that "due process bars courts from applying a *novel construction* of a criminal statute that neither the statute nor any prior judicial decision has disclosed to be within its scope," 520 U.S. 259, 266 (1997), the lower courts did not convict Sanders based on a novel construction of the statute, but rather interpreted the applicable tax provisions in a manner consistent with state administrative opinions and judicial decisions from other states. In short, the lower courts' construction of the statute was not novel, but entirely foreseeable in light of the statutory language and the many cases from other jurisdictions in which courts considering similar tax provisions have found the exchange of coins and bullion for cash to be taxable. *See, e.g.*, *Scotchman's*, 654 S.W.2d at 873.

Sanders argues on appeal that his conviction violates due process precisely because the Tennessee courts relied on decisions from *other* states that addressed the scope and applicability of tax statutes similar to the one at issue here. Because such decisions are not "authoritative constructions" of Tennessee law under *Lanier*, Sanders argues, they did not put him on notice that his conduct was criminal and his conviction therefore violates due process. Sanders claims that, to satisfy due process, a "prior judicial decision" must have construed the "very statute in issue in the criminal case, not some other statute from some other State." Pet. Reply Br. at 8.

Under Sanders's theory, due process would preclude courts from interpreting statutes in the context of individual cases by providing the first defendant prosecuted under the statute with a constitutional defense:  the court could not interpret the statute in the first instance (and thereby set a precedent for subsequent cases) because no "prior judicial decision" had construed the "very statute" at issue.  Such an approach is simply untenable.  Moreover, even the *Mallas* opinion on which Sanders so heavily relies acknowledges  that "due process does not require the prosecution to cite a litigated fact pattern directly on point," and that "a duty not articulated by regulatory language or judicial construction may nonetheless be compelled by the authoritative force of common sense." *Mallas*, 762 F.2d at 364.

In 1981, the Office of the Attorney General of Tennessee issued an opinion stating that the sale of gold and silver coins and bullion is subject to state sales tax.  *See* 10 Op. Att'y Gen. 967 (1981).  Thus, although there were no Tennessee cases or revenue rulings directly on point, the closest Tennessee authority agreed with courts in several other jurisdictions that Sanders's business transactions were subject to sales tax.  In support of his position, Sanders cites *United States v. Harris*, 942 F.2d 1125, 1128 (7th Cir. 1991), a case in which the Seventh Circuit reversed the defendant's conviction for willful tax evasion because traditional sources of notice were ambiguous as to whether the defendant would be subject to taxation.  However, the *Harris* court did not reverse solely because traditional sources of notice were ambiguous about the defendant's tax liability; in granting the defendant's request for relief, the court emphasized that the closest state authority actually *favored* the defendant's position that her income was not taxable.  In this case, unlike in *Harris*, the closest state authority (the Tennessee Attorney General's opinion letter) was consistent with judicial decisions from several other states (including the Arkansas judgment against Sanders for sales tax liability) that Sanders's sales were subject to state tax.

as an affirmative defense, is not a reason for exempting from tax the sale of valuable coins and metals that will, in the vast majority of cases, never be used as currency.

Sanders argues on appeal that the Tennessee courts should not have affirmed his conviction on the basis that he sold coins for their value as precious metals rather than for their value as currency because the government at trial relied not on the "intrinsic value" theory adopted by the Tennessee appellate courts, but on what Sanders contends was insufficient evidence of his customers' "investment intent." Having reviewed the trial record, we conclude that investment intent was not an element of the crime for which Sanders was convicted.  The government attributed investment intent to Sanders's customers because they purchased the coins for amounts far greater than that indicated by the coins' face value as currency.  Because the intrinsic value of the coins sold far exceeded the coins' value as currency, the government referred to the purchase of coins with "investment intent" as a proxy for purchases based on a coin's intrinsic value.  Thus we conclude that the government's alleged failure to produce sufficient evidence of investment intent at trial, even if proven, would not undermine the legitimacy of Sanders's conviction.

Sanders also attacks the "intrinsic value" test on its merits as an unprincipled and inappropriate means of determining whether a particular sale is taxable.  The usefulness of the "intrinsic value" test as a means for distinguishing non-taxable currency-for-currency exchanges from taxable sales of coins-qua-tangible investment property is obvious.  In this case, for example, the evidence presented at trial that Sanders's customers did not intend to use the coins and bullion they purchased as currency is bolstered by the fact that it would make little sense, in an economy where paper currency is freely accepted, to pay $5 cash for a gold coin with a face value of $1, and then use that coin to pay a debt or purchase services for which the buyer could have paid with paper (rather than the more valuable gold) currency.

representative, values, the lower courts properly found the transactions taxable as sales of tangible personal property and properly distinguished the cases cited by Sanders. *See, e.g.,* *Bronson v. Rhodes*, 74 U.S. (7 Wall) 229, 250 (1868) (holding that a *contract* designating payment in gold or silver coins, if paid in federal reserve notes, should be paid in an amount equal to the actual value of the gold or silver demanded in the contract and not merely a nominal amount); *Thompson v. Butler*, 95 U.S. 694, 696 (1878) (equating federal reserve note dollars with coin dollars as a medium of exchange). Because Sanders has failed to show that the state courts' decisions are "contrary to" Supreme Court precedent or otherwise involve an "unreasonable application of clearly established Federal law," the district court did not err in denying relief on this assignment of error. 28 U.S.C. § 2254(d); *see also Williams*, 120 S. Ct. at 1519.

### Sufficiency of the Evidence

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court stated that, in evaluating the sufficiency of evidence, a reviewing court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. Based on the evidence adduced at trial, and noting that the coins and bullion sold by Sanders were sold based on their intrinsic, rather than their representative, values, the state appellate courts did not err in finding the facts sufficient, as a matter of law, to allow a rational trier of fact to find Sanders guilty beyond a reasonable doubt. Contrary to Sanders's assertions, the "intrinsic-value" test[2] for taxable sales *is* simply a variant of the "investment-theory" test advanced by the state at trial. That a coin is sold for its intrinsic value rather than its face value generally indicates investment intent on the part of the buyer, and the lack of such intent, though perhaps admissible

---

[2]Under the "intrinsic value theory," the sale of a coin is taxable as a sale of personal property if the price of the coin is based on the value of the coin's precious metal content rather than on its face value as currency.

---

In response to the state's argument that the Attorney General's opinion letter, along with cases from other jurisdictions, properly noticed him that his sales were taxable, Sanders argues simply that the notice was not sufficiently specific or authoritative. In *United States v. Ingredient Technology Corp.*, 698 F.2d 88, 96 (2d. Cir. 1983), however, the Second Circuit held that:

> All the Due Process clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden, and thus not *lull the potential defendant into a false sense of security*, giving him *no reason even to suspect* that his conduct might be within its scope.

*Id.* at 96 (citation omitted, emphasis added).

In this case, Sanders had many reasons to "suspect" that his conduct might give rise to tax liability. The language of the Tennessee Code, combined with the attorney general's opinion letter, several cases from other states, and the Arkansas judgment against him for the very same practice all served to place Sanders on notice that his sales were taxable in Tennessee. Moreover, the language in Sanders's "trade confirmations" and in the letter in which he discussed the sales tax law in Tennessee suggests that he was aware of his potential tax liability, but thought he might be able to avoid it by relying on semantic distinctions, hence his attempt to recharacterize his sales of coins and precious metals as "purchases" of "obligations" in the form of Federal Reserve notes. The evidence produced at trial suggests that Sanders chose to risk prosecution for tax evasion in exchange for greater profits. That his attempt to exploit the ambiguity in the tax laws failed is not a basis for granting relief under the due process clause.[1]

---

[1]In a final (and unsuccessful) effort to challenge his conviction on due process grounds, Sanders argues that in affirming his conviction by reference to the "intrinsic value" (rather than the "investment") theory of taxable transactions (for a more detailed discussion of these theories, *see*

*Constitutionality of Imposing Sales Tax on the Sale of Gold and Silver Coins and Bullion*

Sanders relies heavily on *Thompson v. Butler*, 95 U.S. 694 (1878), to support his contention that gold and silver coins that Congress has recognized as legal tender cannot be "demonetized" and sales of such coins taxed simply because the person purchasing them intends to hold them as an investment. Sanders's argument not only defies common sense; it is not supported by the cases he cites. In *Thompson*, the Supreme Court held only that creditors could not discriminate between coin and paper currency when a debtor sought to use one or the other form of currency to satisfy a debt. *See id.* at 969 (stating that "as money, that is to say, as a medium of exchange, the law knows no difference between [paper currency and specie coins]"). In this case, unlike in *Thompson*, there is no indication that any of Sanders's customers planned to use the coins or bullion they purchased as currency. Bullion is not legal currency because it has not been minted or otherwise legitimately issued by a government. And gold and silver coins, although legally a form of currency, are properly taxed as personal investment property when they are purchased not for their face value as currency, but for their intrinsic value either as collectors' items or as precious metals. Thus, Sanders's theory that imposing sales tax on the sale of legal-tender silver and gold coins unconstitutionally interferes with Congress's exclusive power to coin money is simply untenable.

With respect to Sanders's argument that the sales tax "demonetizes" legitimate currency, it is important to note that

---

*infra* pp. 16-18 and n.2) the state appellate courts affirmed his conviction on grounds not presented to the jury at trial. *See, e.g., Dunn v. United States*, 442 U.S. 100, 106-07 (1979) ("To uphold a conviction on a *charge* that was . . . no[t] presented to a jury at trial offends the most basic notions of due process . . . . Appellate courts are not free to revise the basis on which a defendant is convicted." (emphasis added)); *see also United States v. Minarik*, 875 F.2d 1186, 1196 (6th Cir. 1989) ("Prosecutors and courts . . . may not allow the facts to define the crime through hindsight after the case is over").

the tax does not in any way prevent the use of legal-tender gold and silver coins as media of exchange; it simply taxes the sale of such coins when there is evidence that they are being purchased as tangible personal property rather than exchanged for use as currency. Indeed, most, if not all, of the courts that have considered this issue have held that imposing sales tax on the purchase of gold and silver coins and bullion for cash does not infringe on Congress's constitutional power to coin and regulate currency. *See, e.g., Thorne and Wilson, Inc. v. Utah State Tax Comm'n*, 681 P.2d 1237 (Utah 1984); *Revenue Cabinet v. Saylor*, 738 S.W.2d 426 (Ky. Ct. App. 1987); *Michigan Nat'l Bank v. Department of Treasury*, 339 N.W.2d 515 (Mich. Ct. App. 1983); *Scotchman's Coin Shop, Inc. v. Administrative Hearing Comm'n*, 654 S.W.2d 873 (Mo. 1983) (en banc).

In determining whether Sanders's transactions were properly taxed as sales of "tangible personal property," the Tennessee Supreme Court agreed with the Missouri Supreme Court in *Scotchman's* that it is necessary to examine the "economic essence" of the transaction to determine whether the sale of coins is taxable because it was based on the tangible (i.e. intrinsic) value of the coins' precious metal content, or not taxable because the sale price was based on the intangible value of the coins' representative value as currency. *See Sanders*, 923 S.W.2d at 543 (citing *Scotchman's*, 654 S.W.2d at 876). The evidence at trial clearly established that the transactions on which Sanders failed to remit sales tax were based on the intrinsic value of the coins rather than on their representative value as currency. As evidenced by Sanders's trade confirmations, the price of each coin was based on its weight, not its face value as established by the issuing government. Thus in one instance a customer paid $8,020 for 20 Krugerrands because the coins were valued at $401 per ounce rather than at a value commensurate with any currency exchange rate between dollars and Krugerrands. *See Sanders*, 923 S.W.2d at 543.

Because the transactions at issue in this case involved the sale of coins and bullion based on their intrinsic, rather than