**Kenneth P. BYRD, Petitioner–Appellant,**

v.

**Art TESSMER, Warden, Respondent–Appellee.**

No. 02–1243.

United States Court of Appeals, Sixth Circuit.

Oct. 30, 2003.

Carl Ziemba, Detroit, MI, for Petitioner–Appellant.

Debra M. Gagliardi, Asst. Atty. General, Office of the Attorney General, Lansing, MI, for Respondent–Appellee.

Before: KEITH and COLE, Circuit Judges; and WEBER, District Judge.*

PER CURIAM.

Petitioner–Appellant appeals from a judgment of the district court, denying his

* The Honorable Herman J. Weber, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## I.

At about 12:20 a.m. on January 2, 1987, a man seized the victim from her car as she arrived at her residence. He forced her into the back seat of another car, which she described as a red Pontiac Firebird with a brown bowling bag inside. The original assailant sat in the back seat with the victim while another man drove five to ten minutes to a secluded location. Upon stopping the car, the driver also moved to the back seat. The victim was forced to perform oral sex on the first man, while the driver penetrated her vagina with his finger and then his penis. After driving another five to ten minutes to a different location, the men released her. The victim later identified Gilbert Luberda as the man who seized her. She never saw the other man's face, but testified that he smelled of Old Spice cologne.

On the afternoon of January 2, 1987, the Michigan State Police recovered a red Pontiac Trans Am owned by Emmit Luberda (Gilbert Luberda's brother) from a snowbank along I–94. The state trooper who found the vehicle noticed a brown bowling bag inside. As a result of the investigation that followed, Petitioner–Appellant Kenneth Byrd and Gilbert Luberda were charged with first degree criminal sexual conduct [rape] and kidnapping. They were tried jointly before a jury in Macomb County, Michigan. Luberda, however, was tried in absentia when he failed to appear after the first day of trial.

The trial court denied Byrd's counsel's motion for a directed verdict. On March 18, 1988, both defendants were found guilty of one count of first degree criminal sexual conduct and one count of kidnapping. On April 15, 1988, Byrd was sentenced to concurrent terms of 50 to 100 years imprisonment on each count.

Following his conviction, Byrd filed an appeal as of right to the Michigan Court of Appeals. On February 26, 1991, the Michigan Court of Appeals affirmed Byrd's convictions, but remanded the case to the trial court for resentencing, to consider proportionality in accordance with *People v. Milbourn*, 435 Mich. 630, 461 N.W.2d 1 (Mich.1990). On remand, the trial court imposed the same sentence of 50 to 100 years of imprisonment on each conviction. Byrd again appealed, and the Michigan Court of Appeals reversed, finding that the trial court had erred in scoring Byrd's conduct for purposes of Michigan's sentencing guidelines.

On the second remand, the trial court sentenced Byrd to 40 to 80 years of imprisonment on the rape conviction, but increased his sentence to life imprisonment on the kidnapping conviction. Byrd appealed the sentences, and the Michigan Court of Appeals reversed and remanded a third time, again indicating that a scoring error had occurred. In response to the government's appeal of that decision, however, the Michigan State Supreme Court issued a peremptory reversal order, reinstating the sentence imposed by the trial court. *People v. Byrd*, 452 Mich. 866, 550 N.W.2d 795 (Mich.1996).

Concurrently, Byrd pursued post-judgment relief in the state trial court. His first motion for relief from judgment, filed on December 16, 1993, was denied by the trial court on February 23, 1994, "pursuant to the Doctrine of Finality." Both the Michigan Court of Appeals and the Michigan Supreme Court denied Byrd's applications for leave to appeal, based on his failure "to meet the burden of establishing entitlement to relief under [Michigan Court Rule] 6.508(D)." *People v. Byrd*, Case No. 185627 (Mich.Ct.App. Nov. 7,

1995); *People v. Byrd,* 451 Mich. 880, 549 N.W.2d 568 (Mich.1996).

In December 2, 1996, Byrd filed a second motion for relief from judgment in the state trial court. On November 24, 1997, the trial court denied that second motion "[p]ursuant to [Michigan Court Rule] 6.502(C)(14)," citing Byrd's failure "to meet his burden of establishing whether any of the grounds for relief requested were raised before; if so, at what stage of the case, and if not, the reasons they were not raised." (J.A. at 53). Both the Michigan Court of Appeals and the Michigan Supreme Court denied Byrd's applications for leave to appeal that decision, again citing Byrd's failure to establish entitlement to relief under Mich. Ct. R. 6.508(D). *People v. Byrd,* Case No. 207897 (Mich.Ct. App. May 6, 1998); *People v. Byrd,* 459 Mich. 934, 615 N.W.2d 734 (Mich.1998).

On February 2, 1999, Byrd filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Michigan. On January 17, 2001, Magistrate Judge Wallace Capel, Jr. issued a Report and Recommendation, finding that Byrd's petition should be denied on grounds of procedural default. On August 27, 2001, however, the district judge rejected that recommendation, concluding that the state court order denying relief had not "clearly and expressly" stated that its judgment rested on a state procedural bar, and that Byrd's habeas petition thus was not procedurally barred. (J.A. at 81–87). The matter again was referred to the magistrate judge for further proceedings.

On February 11, 2002, after considering the merits of Byrd's asserted grounds for habeas relief, the district court rejected all such grounds except that based upon the increase in Byrd's kidnapping sentence. Finding that the trial court's imposition of a harsher sentence after reversal by the appellate court gave rise to a presumption of vindictiveness, the court conditionally granted Byrd's habeas petition as to the kidnapping charge only, unless the state court resentenced Byrd on that conviction within 90 days. The state court subsequently reduced Byrd's sentence on the kidnapping conviction to 25 to 50 years of imprisonment. On April 30, 2002, the district court issued an order and judgment denying Byrd's petition for a writ of habeas corpus.

In the interim, on February 19, 2002, Byrd filed his notice of appeal from the district judge's order of February 11, 2002. The district court granted Byrd's motion for certificate of appealability. Although Byrd's appeal encompassed all grounds enumerated in his original habeas petition except the kidnapping sentence, the parties concur in condensing Byrd's claims into two essential issues: 1) whether the district court properly determined that the evidence identifying Byrd as one of the perpetrators was constitutionally sufficient, and 2) whether the district court properly determined that the evidence regarding the asportation element of the kidnapping charge was constitutionally sufficient.[1]

## II.

A federal court may grant a habeas corpus petition only when it concludes that the state adjudication of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

---

1. Although the state of Michigan continues to maintain in its brief that Byrd's petition should be denied on grounds of procedural default, the state failed to appeal from the district judge's contrary finding below, so that issue is not properly before us.

United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2). A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., concurring).

In reviewing a district court's decision to grant or to deny a petition for a writ of habeas corpus under 28 U.S.C. § 2254, we review all questions of fact under a "clearly erroneous" standard and consider all questions of law *de novo*. *Carson v. Burke*, 178 F.3d 434, 436 (6th Cir.1999).

The identity of a defendant as the perpetrator of the crimes charged is an element of the offense and must be proved beyond a reasonable doubt. *People v. Turrell*, 25 Mich.App. 646, 181 N.W.2d 655, 656 (Mich.Ct.App.1970). In evaluating the sufficiency of evidence, a reviewing court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Sanders v. Freeman*, 221 F.3d 846, 856 (6th Cir.2000).

■ The district court correctly determined that sufficient evidence pointed to Byrd as the second attacker. Although the victim in this case was unable to identify Byrd as the assailant whose face she never saw, a conviction may rest on circumstantial evidence alone, and such evidence "need not 'remove every reasonable hypothesis except guilt'." *United States v.*

*Ferguson*, 23 F.3d 135, 140 (6th Cir.1994). The victim testified that the driver/attacker smelled of Old Spice cologne, and the evidence showed that Byrd owned and used that brand. Additionally, the evidence revealed that Byrd was an acquaintance of and frequently in the company of Gilbert Luberda, the man positively identified by the victim as the other assailant. Evidence also showed that Byrd had the same blood type as the attacker whose semen was found in the victim, and that neither Gilbert Luberda nor his brother Emmit matched that type. Finally, testimony indicated that a man resembling Byrd and introduced as "Oscar" was the lone person with Gilbert Luberda shortly after the crime, and that "Oscar" was Byrd's nickname.

Byrd challenges the competency of the evidence which indicated that Gilbert called his companion "Oscar," claiming that such testimony amounted to inadmissible hearsay. Alleged trial court errors concerning the application of state evidentiary law, however, are not cognizable as grounds for habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Moreover, the district court correctly determined that such evidence was admissible. Michigan's evidentiary rules essentially track the Federal Rules of Evidence. Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). A statement is *not* hearsay, however, if the party against whom it is offered "has manifested an adoption or belief in its truth." Fed. R.Evid. 801(d)(2)(B). The trial court relied on the Michigan corollary to that rule in allowing witness Geress's testimony that Gilbert Luberda introduced his companion as "Oscar," accepting the prosecution's argument that the man's silent acquiescence in being called (and arguably even re-

sponding to, by accepting a beer offered to) "Oscar" amounted to an admission. (*See* J.A. at. 925–28).

Adoption of a statement "can be manifested by any appropriate means, such as language, conduct, or silence." *United States v. Jinadu*, 98 F.3d 239, 244 (6th Cir.1996) (citing *Marshall v. Young*, 833 F.2d 709, 716 (7th Cir.1987)). When a statement is offered as an adoptive admission, the primary inquiry is whether the statement was such that, under the circumstances, an innocent defendant would normally be induced to respond, and whether there are sufficient foundational facts from which the jury could infer that the defendant heard, understood, and acquiesced in the statement. *Id.* (citing *United States v. Jenkins*, 779 F.2d 606, 612 (11th Cir.1986)). In this instance, the evidence showed that the man with Gilbert Luberda failed to correct his introduction as "Oscar," and accepted the beer thereafter offered to "Oscar." Under such circumstances, his conduct fairly could be deemed an admission that he was "Oscar."

The district court also correctly determined that Byrd did not raise an effective habeas challenge to the asportation element of his conviction. Although asportation is not mentioned in Michigan's kidnapping statute, Mich. Comp. Laws § 750.349, asportation of the victim is a judicially required element of the crime of kidnapping by forcible confinement or imprisonment. *People v. Jaffray*, 445 Mich. 287, 519 N.W.2d 108, 114 (Mich.1994). To establish "asportation" in a kidnapping case, the victim must be moved in some manner which is not merely incidental to the commission of another, underlying crime, unless the underlying crime involves murder, extortion, or the taking of a hostage. *People v. Murph*, 185 Mich.App. 476, 463 N.W.2d 156, 158 (Mich.Ct.App.1990).

Byrd argues that the evidence was insufficient to show that any moving of the victim in this case was not incidental to the commission of the underlying crime of rape. The record belies that argument. The victim testified that the two men drove for some five to ten minutes after grabbing her outside of her apartment before they pulled over in a secluded area to rape her. In addition, her testimony indicated that the perpetrators originally ordered her out of the car immediately after the rape, but then said, "no, we can't let her out here," and again drove for five to ten minutes before releasing her. In light of that evidence, the court reasonably found that the jury could infer that the perpetrators moved the victim not "incidentally," but in order to conceal their crime.

For the foregoing reasons, we AFFIRM the judgment of the district court denying Byrd federal habeas relief.

