virtually no preparation, failed to present any of this information at Glenn's sentencing hearing, and failed even to request appointment of medical experts until nine days before Glenn's hearing. *Id.* at 1208-09. In the present case, Alley's lawyers engaged in extensive preparation and investigation (including testing Alley for organic brain damage), and they found and presented a great deal of evidence and testimony about Alley's mental state and medical past.

This panel simply can not hold in these circumstances that it was objectively unreasonable for the state court to hold that the investigation and presentation of Alley's medical history undertaken by Alley's attorneys did not fall "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. Accordingly, we affirm the district court's denial of Alley's habeas petition on this issue.

## III

For the foregoing reasons, we AFFIRM the district court's denial of Alley's petition for a writ of habeas corpus.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2002 FED App. 0344P (6th Cir.)
File Name:  02a0344p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————

SEDLEY ALLEY,
    *Petitioner-Appellant,*

    *v.*                 No. 99-6659

RICKY BELL,
    *Respondent-Appellee.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 97-03159—Bernice B. Donald, District Judge.

Argued:  July 30, 2002

Decided and Filed:  October 3, 2002

Before:  RYAN, BOGGS, and BATCHELDER, Circuit
Judges.

—————————

### COUNSEL

**ARGUED:**  Paul R. Bottei, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. Joseph F. Whalen III, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee. **ON BRIEF:**  Paul R. Bottei, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, Robert L. Hutton, GLANKLER & BROWN, Memphis, Tennessee, for

Appellant.    Joseph F. Whalen III, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee.

_____

**OPINION**

_____

BOGGS, Circuit Judge.    Petitioner Sedley Alley was convicted of the 1985 kidnapping, rape, and murder of United States Marine Corps Lance Corporal Suzanne Marie Collins and was sentenced to death.  His conviction and sentence were affirmed on direct appeal, and Alley was denied relief in state post-conviction proceedings.  Alley's petition for federal habeas relief, filed pursuant to 28 U.S.C. § 2254, was denied by the United States District Court for the Western District of Tennessee in an exhaustive and well-reasoned opinion.  For the reasons herein, we affirm the district court's denial of Alley's petition.

**I**

Alley, a civilian married to a military person, abducted nineteen-year old Lance Corporal Collins while she was jogging near Millington Naval Base in Millington, Tennessee late in the evening of July 11, 1985.  He attacked and murdered her and left her body in a field.

Two marines jogging near where Collins was abducted heard Collins scream and ran toward the sound.  However, before they reached the scene, they saw Alley's car drive off. They reported to base security and accompanied officers on a tour of the base, looking for the car they had seen. Unsuccessful, they returned to their barracks.

Soon after returning to their quarters, however, the marines were called back to the security office, where they identified Alley's car, which had been stopped by officers.  Alley and his wife gave statements to the base security personnel accounting for their whereabouts.  The security personnel

investigation and presentation of Alley's medical history undertaken by Alley's attorneys did not fall "below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 688.  *See Bell v. Cone*, 122 S. Ct. 1843, 1852 (2002) ("under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly.  Rather, [petitioner] must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." (citation omitted)).

Undisputed testimony elicited by the state trial court shows that the attorneys in this case sought out details of Alley's medical history from the people who knew him best, and passed all of the information they received on to medical experts they had hired to examine Alley and assist in the case. When they were told of Alley's childhood head injury, they ordered neurological testing, which came back negative. Further, Alley's attorneys presented evidence on the conditions Alley proffered, with the exception of the alleged birth defects.  With respect to the birth records, as mentioned before, Alley's family never informed the attorneys about any problems at birth, and the medical experts involved in the case never asked for birth records.

In arguing that this panel should find the state court's rejection of Alley's ineffectiveness argument an unreasonable application of *Strickland*, Alley points to this court's decision in *Glenn v. Tate*, 71 F.3d 1204 (6th Cir. 1995).  However, this case does not help Alley.  First, *Glenn* was not decided under the AEDPA standard of review, which serves to restrict greatly the circumstances under which federal courts can grant a writ of habeas corpus.  Second, the facts of *Glenn* significantly differ from those of the present case.  In *Glenn*, the petitioner was convicted of murdering a sheriff's deputy while trying to break his older brother out of jail.  *Id.* at 1205-06.  The petitioner suffered organic brain damage prior to birth, was classified as mentally retarded, and was considered, as a result, completely under the influence of his older brother.  *Id.* at 1205.  However, Glenn's lawyers engaged in

testimony at the trial court hearing suggested that these records were not regularly sought. *Id.* at 141.

The state trial court, after viewing the records and information proffered by Alley and hearing the testimony of all of the experts, concluded that Alley's trial counsel had sufficiently investigated and presented Alley's medical history. *Alley*, No. P-8040, slip op. at 18-19. The court noted that all of the experts who testified at trial, for both sides, agreed that the medical records Alley proffered would not have changed their conclusions. *Id.* at 18. Further, the court explained that, "[e]xcept for the birth records, most of the records about the petitioner's illnesses and surgeries, involving his kidneys, bladder and penis, were presented to the jury in Drs. Battle and Marshall's testimony." *Id.* at 18-19.

On post-conviction appeal, the Tennessee Court of Criminal Appeals upheld the trial court's decision. *Alley*, 958 S.W.2d at 149-52. Citing the standard for constitutionally ineffective assistance of counsel set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the appeals court sought to determine whether Alley had shown that his counsel had not rendered reasonably effective assistance and whether Alley had suffered prejudice from his counsel's deficient performance. *Alley*, 958 S.W.2d at 149. The court of appeals noted that "[t]he trial court found that the defense attorneys were effective in their representation of the petitioner." *Ibid.* Citing testimony from the trial court, the appeals court agreed, finding that "[t]he record demonstrates that defense counsel spent a great deal of time in the selection and preparation of trial. The petitioner was examined by several in the medical profession." *Id.* at 150. The court held, accordingly, that Alley had not been denied effective assistance. *Id.* at 152.

The Tennessee court having considered and adjudicated Alley's ineffective assistance argument on the merits, and having applied the *Strickland* standard in its analysis, the first question for this court under AEDPA is whether it was objectively unreasonable for the state court to hold that the

were satisfied with Alley's story, and Alley and his wife returned to their on-base housing.

Collins's body was found a few hours later, and Alley was immediately arrested by military police. He voluntarily gave a statement to the police, admitting to having killed Collins but giving a substantially false – and considerably more humane – account of the circumstances of the killing.

Alley was convicted on March 18, 1987 of murder in the first degree and was sentenced to death. He was also convicted of aggravated kidnapping and aggravated rape, for which he received consecutive forty-year sentences. The Tennessee Supreme Court affirmed Alley's conviction and sentence on direct appeal. *State v. Alley*, 776 S.W.2d 506, 508-10, 519 (Tenn. 1989).

Alley filed a state petition for post-conviction relief, alleging numerous grounds, including several claims of judicial bias, challenges to the trial court's evidentiary rulings, and claims of ineffective assistance of counsel. The judge who presided over Alley's trial held several hearings on the petition before denying it. On appeal, the Court of Criminal Appeals vacated the denial and, in response to Alley's claims of judicial bias, remanded the case for an evidentiary hearing before a different trial judge. *Alley v. State*, 882 S.W.2d 810, 823 (Tenn. Crim. App. 1994).

Another trial judge undertook an evidentiary hearing, and then denied Alley's petition. *Alley v. State*, No. P-8040, slip op. (Shelby County Crim. Ct. Aug. 31, 1995). This disposition was affirmed by the Tennessee Court of Criminal Appeals, and the Tennessee Supreme Court denied Alley permission to appeal. *Alley v. State*, 958 S.W.2d 138 (Tenn. Crim. App. 1997), *permission to appeal denied*, (Tenn. Sept. 29, 1997).

Alley filed the present petition for habeas corpus in district court, and the court denied Alley relief. *Alley v. Bell*, 101 F. Supp. 2d 588, 604-06, 666 (W.D. Tenn. 2000). Thereafter, this court granted him a certificate of appealability on the

following five issues: (1) whether Alley was denied due process because he was tried by a biased judge; (2) whether ex parte contacts between the judge and jurors in Alley's case violated his constitutional rights; (3) whether, at the guilt phase, Alley was denied his right to present a full defense through the unconstitutional exclusion of proof that he suffers from multiple personality disorder; (4) whether, at the sentencing phase, Alley was denied his right to receive consideration of mitigating evidence when the trial court excluded the same multiple personality disorder evidence; and (5) whether Alley received constitutionally ineffective assistance of counsel.

## II

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), a federal court may not grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court, unless the state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Court] on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" the Court's decision. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court decision involves an "unreasonable application" of clearly established Supreme Court precedent when it correctly identifies the governing legal standard but applies it to the facts of the case before it in an objectively unreasonable manner. *Id.* at 409-10.

Federal courts can only consider on habeas review claims that a petitioner has first raised before the state courts. *See* 28

Alley raised this issue in his post-conviction proceedings before the Tennessee Court of Appeals, and this was one of the issues addressed at the evidentiary hearing held in the trial court after the court of appeals remanded Alley's case. The trial judge who replaced Judge Axley held an extensive evidentiary hearing and undertook a detailed analysis of the record in the case. Alley's relevant allegations of ineffectiveness were substantially the same as he raises to this court – that his attorneys failed sufficiently to investigate and present evidence of birth and childhood medical problems that might have lent weight to his insanity defense at the guilt phase and mitigation at the sentencing phase.

The testimony taken by the trial court and the conclusions it reached, summarized by the Tennessee Court of Appeals, make clear that Alley's attorneys conducted a thorough investigation into Alley's history. *Alley*, 958 S.W.2d at 140-47, 150-51. His attorneys testified that they interviewed Alley's sister, mother, and wife about Alley's childhood and medical history. *Id.* at 144. His family provided the attorneys with information regarding Alley's strange behavior as a child, a diving accident in which Alley sustained a head injury, and extensive urethral, bladder, and kidney problems Alley suffered as a child. *Ibid.* However, the family did not inform Alley's attorneys about any problems at Alley's birth. *Id.* at 147.

Alley's attorneys arranged for him to undergo neurological examinations, which showed no indication of brain damage. *Id.* at 146. Further, Alley's attorneys arranged for him to be examined by several medical professionals, and Alley's attorneys passed on to them the information and records they'd obtained of Alley's past medical history. *Ibid.* None of the medical experts consulted by Alley's attorneys suggested the need for birth records, *ibid.*, and indeed

---

therefore, we affirm the district court's denial of Alley's request for funding.

because it held the tapes irrelevant and unreliable. Further, as explained above, the court did not do so based on a per se rule, or a mechanical, arbitrary, or disproportionate application of a state rule. The state court may have erred in its weighing; however, Alley has simply not shown that this state evidentiary decision was contrary to clearly established Supreme Court case law.

### Ineffective Assistance of Counsel Claim

Finally, Alley argues that he received constitutionally ineffective assistance of counsel when his trial counsel failed to investigate and present to the jury additional medical evidence at both the guilt and sentencing phases of his trial. Specifically, Alley contends that his counsel failed to present evidence of brain damage, spina bifida, an underdeveloped penis, a distorted bladder, aberrant kidneys, and problems Alley experienced at birth. Alley argues that his counsel's failure to investigate these conditions further and present evidence of them to the jury fell below the standard of reasonableness, and that his counsel's failure prejudiced him in that the jury would not have sentenced him to death if they'd known these things.[7]

---

[7]Alley relatedly challenges the district court's denial of his request for funding in order to conduct brain and genetic tests aimed at garnering additional evidence of medical impairments that his trial attorneys failed to investigate or present. 21 U.S.C. § 848(q)(9), which applies to death penalty-eligible criminal defendants and habeas petitioners, provides:

> Upon a finding that investigative, expert, or other services *are reasonably necessary for the representation of the defendant*, . . . the court may authorize the defendant's attorneys to obtain such services on behalf of the defendant and, if so authorized, shall order the payment of fees and expenses therefor . . . .

(emphasis added)
In an order denying Alley's request for funding, the district court in this case held that funding for such tests was not reasonably necessary for Alley's habeas petition, because Alley failed to demonstrate how the tests were relevant to the only question before the district court – "whether the state courts reasonably applied federal law in holding that his trial counsel did not provide ineffective assistance." This holding was clearly correct;

U.S.C. § 2254(b); *Stanford v. Parker*, 266 F.3d 442, 451 (6th Cir. 2001) ("Where a petitioner has not fully and fairly presented a federal claim to the state's highest court . . . , a federal court ordinarily will not consider the merits of that claim"). Claims not first raised in state court are unexhausted and are ordinarily dismissed without prejudice, in order to permit the petitioner the opportunity to pursue them in state court. *Rose v. Lundy*, 455 U.S. 509, 518, 520-22 (1982).

However, if an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review. *See Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991); *Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977); *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000) ("When a habeas petitioner fails to obtain consideration of a claim by a state court, . . due to the petitioner's failure to raise that claim before the state courts while state-court remedies are still available . . . , that claim is procedurally defaulted and may not be considered by the federal court on habeas review."). In order to gain consideration of a claim that is procedurally defaulted, a petitioner must demonstrate cause and prejudice for the failure, or that a miscarriage of justice will result from the lack of review. *Wainwright*, 433 U.S. at 87, 90-91; *Seymour*, 224 F.3d at 550.

These rules apply both to entirely new legal claims and new factual bases for relief; for a claim to be considered exhausted, "the habeas petitioner must have 'fairly presented' to the state courts the 'substance' of his federal habeas corpus claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 277-78 (1971)); *see also Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) ("the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court.").

## *Judicial Bias Claims*

Alley's petition for a writ of habeas corpus lists thirteen alleged instances of judicial bias, which he contends entitle him to habeas relief on the ground that he was denied his due process right to a fair trial in a fair tribunal. In denying Alley's petition for habeas relief, the district court helpfully divided these instances into three groups: (1) claims based on alleged conduct during state post-conviction proceedings; (2) claims that Alley raised before the state courts; and (3) claims that Alley failed to raise before the state courts. *Alley*, 101 F. Supp. 2d at 612, 614-18, 634-38. On appeal, Alley only expressly challenges the district court's holding with respect to the third group; however, we will briefly discuss the first two as well.

The due process clause of the Fourteenth Amendment guarantees a criminal defendant, as any litigant, the right to a fair trial in a fair tribunal. *In re Murchison,* 349 U.S. 133, 136 (1955). If a habeas court determines that bias by a state judge resulted in a constitutional violation, then the court is required to overturn the state court decision. *See Maurino v. Johnson,* 210 F.3d 638, 645 (6th Cir. 2000) ("Because judicial bias infects the entire trial process it is not subject to harmless error review"). This court has looked to the Supreme Court's decision in *Liteky v. United States*, 510 U.S. 540, 552 (1994), to provide the standard for deciding judicial bias claims; in that case, the Court explained that "the pejorative connotation of the terms 'bias' and 'prejudice' demands that they be applied only to judicial predispositions that go beyond what is normal and acceptable." *Id.* at 552; *see also Maurino*, 210 F.3d at 645.

Two of the judicial bias claims Alley makes in his habeas petition deal with alleged conduct during state post-conviction proceedings. Alley claims that Judge W. Fred Axley made improper comments during Alley's post-conviction proceedings, and that he expressed dissatisfaction with the litigation of post-conviction proceedings in other capital cases. However, error committed during state post-conviction

It is clear that this rule limits the traditional discretion of state courts to exclude evidence based on state evidentiary rules. However, nothing in the Supreme Court cases cited by Alley compels the conclusion that state courts do not retain some discretion to apply their rules of evidence at the sentencing phase. *See, e.g., Green v. Georgia*, 442 U.S. 95, 97 (1979) (overturning a death sentence on the ground that Georgia's hearsay rule had been applied "mechanistically" to exclude relevant mitigating evidence); *see also Sallahdin v. Gibson*, 275 F.3d 1211, 1237 (10th Cir. 2002) (after reviewing the *Lockett* line of cases, explaining that "[t]his is not to say, however, that a trial court must admit any and all mitigation evidence proffered by a capital defendant. Review of the above-cited cases indicates that proffered mitigation evidence must be reliable and relevant to be admitted."); *Paxton v. Ward*, 199 F.3d 1197, 1214 (10th Cir. 1999) ("This Supreme Court authority makes clear that a state court may not apply a state rule of evidence in a per se or mechanistic manner so as to infringe upon a defendant's constitutional right to a fundamentally fair trial and to present mitigating evidence in a capital proceeding."); *Buchanan v. Angelone*, 103 F.3d 344, 348-49 (4th Cir. 1996) (application of Virginia's hearsay rule to exclude mitigating evidence from a capital sentencing hearing did not rise to the level of a constitutional violation); *Hutchins v. Garrison*, 724 F.2d 1425, 1437 (4th Cir. 1983) ("We find no indication that *Eddings* and *Lockett* preempt all state rules of evidence"). Indeed, the Court in *Lockett*, 438 U.S. at 604 n.12, explicitly held that "[n]othing in this opinion limits the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense."

In the present case, the Tennessee courts did not exclude from the jury's consideration at sentencing the alleged fact of Alley's multiple personality disorder. Indeed, Alley had the opportunity to present wide-ranging evidence on this aspect of Alley's character. Instead, the state court, after viewing the tapes, merely weighed and then precluded introduction of the videotapes allegedly showing manifestations of this disorder,

law," but noting that the independent review "is not a full, de novo review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA.").

As already mentioned, the Tennessee Supreme Court held that the videotape evidence was inadmissible under Tennessee state law, upholding the state trial court's determination that the evidence was unreliable and irrelevant. This court does not have the authority to review the Tennessee Supreme Court on matters of state law.[6] *See Gall v. Parker*, 231 F.3d 265, 303 (6th Cir. 2000) ("Principles of comity and finality . . . command that a habeas court can not revisit a state court's interpretation of state law, and in particular, instruct that a habeas court accept the interpretation of state law by the highest state court on a petitioner's direct appeal."). Accordingly, the question before this panel is whether the exclusion of the videotape evidence, irrelevant and inadmissible under state law, was contrary to the Supreme Court's decision in *Lockett*.

The Supreme Court has explained the rule in *Lockett* and its progeny as follows:

"'[T]he sentencer [shall] . . . not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.'"

*Skipper v. South Carolina*, 476 U.S. 1, 4 (1986) (quoting *Eddings*, 455 U.S. at 110 (quoting *Lockett*, 438 U.S. at 604)) (emphasis in original).

---

[6] In his brief, Alley implicitly asks this court to overturn the Tennessee court's state law holding. He repeatedly asserts that under Tennessee law, the rules of evidence are not applicable at sentencing hearings; therefore, according to Alley and contrary to the Tennessee court's holding, the proffered videotape evidence *was* admissible. *See* Petitioner's Brief at 55, 57-58. We can not so hold.

proceedings can not provide a basis for federal habeas relief. *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1986). Therefore, these allegations are not cognizable on habeas review.

Several of Alley's other claims for judicial bias have already been considered and rejected by the Tennessee Court of Criminal Appeals. *Alley*, 958 S.W.2d at 147-49. These include Alley's contentions that: (1) Judge Axley engaged in undisclosed ex parte contact with members of the victim's family, who sent him a letter; (2) Judge Axley engaged in ex parte contact through his wife's sitting in the courtroom with the victim's family during the trial; (3) Judge Axley permitted members of the victim's family to enter a hallway through which access could be had to the judge's chambers and the jury room; (4) Judge Axley pressured mental health professionals involved in the case to speed up their mental examinations of Alley; and (5) Judge Axley included false statements in the "Rule 12" report he prepared after trial and submitted to the Tennessee Supreme Court as part of the direct appeal process.

The state court having rejected these contentions on the merits, this court can only grant Alley's petition if the state court's determination was contrary to, or an unreasonable application of, Supreme Court case law. 28 U.S.C. § 2254(d).

In rejecting Alley's judicial bias claim, the state court found that the judge's receipt of a letter from the victim's family was not evidence of bias, because the judge did not respond to the letter. *Alley*, 958 S.W.2d at 149. Similarly, the state court found no evidence of bias in the general accusation that the judge's wife sat near the victim's family during trial, or in the proximity of the judge's chambers to areas of the courthouse to which the family members had access. *Ibid*. The state court found no basis at all for Alley's contention that the Judge pressured the mental health teams involved in Alley's trial. *Id*. at 148. Finally, the state court noted that the Rule 12 report can not form the basis for an allegation of bias, as it is merely used to assist the Tennessee Supreme Court in

its statutory duty to review the record in death penalty cases by providing the judge's analysis of what evidence was presented.   *Ibid.*   The district court held that these determinations were neither contrary to, nor an unreasonable application of, Supreme Court case law, *Alley*, 101 F. Supp. 2d at 637, and Alley presents nothing with which to challenge that holding on appeal.

Alley does challenge the district court's holding with respect to the third set of judicial bias claims.  Alley's petition sets out several claims that the district court held were procedurally defaulted, because Alley had failed to raise them before the state courts.

First, Alley contends that the trial judge deprived him of due process by engaging in undisclosed ex parte conversations with two students during his trial and opining to them after the trial was completed about the likelihood that Alley's death sentence would ever be carried out.  The basis for this allegation is an affidavit from one of the students, wherein he states that he and another student were invited by Judge Axley to watch the trial, and that during breaks they would go into Judge Axley's chambers to discuss the case with him. During these discussions, the student states, Judge Axley seemed unfavorably disposed toward Alley and appeared not to believe his multiple personality defense.  The affidavit goes on to state that, after the verdict was handed down, Judge Axley said something to the effect of "[t]he son of a bitch will die of old age before he ever goes to the chair."

Second, Alley claims that Judge Axley engaged in undisclosed ex parte conversations with jurors during trial. This allegation is based on the affidavit of one juror, and the affidavit of an investigator who interviewed a second juror. The juror's affidavit states that, in response to calls from the jury, "[t]he Judge came into the jury room on two or three occasions, and answered two or three questions we had during the deliberations.  One of the questions we had concerned the difference between the lesser included charges of murder." The investigator's affidavit states that another juror told her

On appeal, Alley contends that the Supreme Court's decisions in *Eddings v. Oklahoma*, 455 U.S. 104 (1982), and *Lockett v. Ohio*, 438 U.S. 586 (1978), make clear that "a capital sentencing jury may not be precluded from considering *any mitigating evidence presented by the capital defendant*." Petitioner's Brief at 55.

As an initial matter, we reject the contention Alley makes in his brief to this court, that the AEDPA standard of review does not apply to this issue because the state courts did not adjudicate Alley's Eighth Amendment claim.  Petitioner's Brief at 58-60.  This is both factually and legally incorrect.

Alley's brief to the Tennessee Supreme Court argued that the trial court erred in excluding the videotapes because they were relevant to mitigation, and Alley had the constitutional "right to present all relevant evidence in mitigation."  The Tennessee Supreme Court held, in response, that the tapes did not contain relevant evidence, because the mitigating factors cited by Alley required evidence of mental state at the time of the crime.  The tapes, on the other hand, provided only evidence of Alley's mental state at the time of the taping (approximately 1-2 years later).  Since Alley's constitutional claim was that he was entitled to present all *relevant mitigating* evidence, the state supreme court's determination that the evidence was not relevant mitigating evidence was an adjudication of that claim.

However, even if the Tennessee court had failed to adjudicate Alley's claim explicitly, when a state court decision articulates its reasoning but fails to address the relevant federal standard, this court on habeas review still applies AEDPA and determines whether the state court's decision was "'contrary to' clearly established Supreme Court precedent as of the time of its decision."  *Doan v. Brigano*, 237 F.3d 722, 731 (6th Cir. 2001); *see also Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000) (following the lead of other circuits in holding "that where the state court has not articulated its reasoning, federal courts are obligated to conduct an independent review of the record and applicable

and the trial court denied his motion. On direct appeal to the Tennessee Supreme Court, Alley argued that this was error, because the evidence was relevant to two potential mitigating circumstances, TENN. CODE ANN. § 39-2-203(j)(2) & (8) (1982) (repealed).[5] Petitioner's Brief to the Tennessee Supreme Court at 34. He further argued that he had a constitutional right to present all relevant mitigating evidence. *Ibid.*

The Tennessee Supreme Court rejected Alley's argument, holding that the two cited mitigating factors required "evidence of defendant's condition *at the time the crime was committed*." *Alley*, 776 S.W.2d at 516 (emphasis in original). The court held that the video contained "no evidence whatever . . . of defendant's mental or emotional state or his ability or lack of ability to appreciate right from wrong or control his conduct on the evening of 11 July 1985." *Ibid.* The court also held, more generally, that – just as in the guilt phase – the trial court did not abuse its discretion in weighing and excluding the videotape evidence at the sentencing phase. As explained above, the trial court had viewed the tapes and had held that they were unreliable and, since they provided no information about the day of the murder, irrelevant.

On habeas review, the district court agreed with the Tennessee Supreme Court. It held that there was no evidence to support Alley's claim that the video contained relevant mitigating evidence. Even if there were such evidence, however, the court held meritless Alley's contention that "a state court cannot exclude inadmissible or irrelevant evidence from a death penalty hearing." *Alley*, 101 F. Supp. 2d at 640.

---

[5] At the time, TENN. CODE ANN. § 39-2-203(j)(2) provided for a mitigating circumstance when the defendant was under the influence of extreme mental and emotional disturbance, and TENN. CODE ANN. § 39-2-203(j)(8) was applicable in cases of substantial impairment of the defendant's appreciation of the wrongfulness of his conduct as a result of a mental disease, defect, or intoxication insufficient to establish a defense to the crime. TENN. CODE ANN. § 39-2-203 (1982) (repealed).

that on a weekend when the court was not in session, the jurors had a picnic and Judge Axley and his son stopped by to say hello and check on the jurors.

Alley also alleges, but does not dwell upon, several other claims of judicial bias that he failed to raise before the state courts. For instance, Alley argues that Judge Axley engaged in undisclosed ex parte contact with members of the victim's family, who sent him a Christmas card. Alley also argues that the judge excluded Alley's hypnosis videotapes on the basis of the judge's personal belief that it lacked credibility. Further, Alley argues that the judge demonstrated hostility toward his counsel and used profanity toward him. Finally, Alley alleges that the judge expressed relief upon sentencing Alley to death.

These allegations fail to present a viable claim of constitutionally-impermissible judicial bias. First, ex parte contact does not, in itself, evidence any kind of bias. Further, the opinions Judge Axley is alleged to have expressed – an unfavorable disposition toward Alley, a belief that Alley would never actually be put to death, and hostility toward Alley's trial counsel – all arose from what happened at trial. Except in extreme cases, to be actionable, bias must stem from an extra-judicial source:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Liteky*, 510 U.S. at 555.  None of Alley's allegations come close to stating a claim for judicial bias.

More importantly, however, these claims are procedurally defaulted.  As explained above, unexhausted claims that would be barred by a state rule are procedurally defaulted and ordinarily may not be considered by a federal court on habeas review.  *Seymour*, 224 F.3d at 549-50.  In the present case, Alley's claims would be barred both by Tennessee's one-year post-conviction statute of limitations, TENN. CODE ANN. § 40-30-202, and by the state's post-conviction waiver rule, TENN CODE ANN. § 40-30-206(f),(g).[1]  As also explained above, in order for a petitioner to overcome a procedural default and receive federal habeas review of that claim, he must show cause for the default and prejudice resulting from it, or that enforcing the procedural default in his case will effect a miscarriage of justice.  *Wainwright*, 433 U.S. 72, 87, 90-91. Cause for a procedural default "must be something *external* to the petitioner, something that cannot fairly be attributed to him."  *Coleman*, 501 U.S. at 753.  Alley makes no attempt on appeal to make a cause and prejudice or miscarriage of justice showing.

Instead, Alley argues that he is entitled to an evidentiary hearing in the district court to further develop his judicial bias claim.  The district court declined to hold an evidentiary hearing on Alley's claims.  *Alley*, 101 F. Supp. 2d at 666.  We

---

[1] TENN. CODE ANN. § 40-30-206 reads in relevant part:
(f) . . . . If the facts alleged [in a post-conviction petition], taken as true, fail to show that . . . the claims for relief have not been waived or previously determined, the petition shall be dismissed . . . .
(g) A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless:
(1) The claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of that right; or
(2) The failure to present the ground was the result of state action in violation of the federal or state constitution.

exclusion of the tapes was not arbitrary, mechanistic, per se, or disproportionate to the concern of the trial court and the rule that the tapes were unreliable, confusing, and irrelevant.

It is well settled that the Constitution does not guarantee a defendant the opportunity to present *any* evidence he desires:

Few rights are more fundamental than that of an accused to present witnesses in his own defense.  In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.

*Chambers*, 410 U.S. at 302 (citations omitted); *see also Crane*, 476 U.S. at 690 ("[W]e have never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability – even if the defendant would prefer to see the evidence admitted.").  It is therefore clear that "even relevant evidence may constitutionally be excluded 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'"  *Sanders v. Freeman*, 221 F.3d 846, 859 (6th Cir. 2000) (quoting FED. R. EVID. 403; and TENN. R. EVID. 403). Rather than apply an arbitrary, mechanistic, per se, or disproportionate rule that would have been contrary to clearly established Supreme Court case law, the state court in Alley's case weighed the value of the evidence against its potential for confusion and unreliability, and excluded it.  In these circumstances, we can not grant a writ of habeas corpus.

*Exclusion of Evidence at the Sentencing Phase*

Alley next argues that, even if his constitutional rights were not violated by the trial court's exclusion of the videotape evidence at the guilt phase of his trial, they were violated by the court's exclusion of the evidence at the sentencing phase.

At the beginning of his sentencing hearing, Alley moved for admission of the hypnosis and Sodium Amytal videotapes,

Finally, the rule under which the evidence was excluded is not disproportionate to the concerns it is intended to address, because by considering and weighing pieces of evidence individually, it avoids over-breadth and the incidental exclusion of evidence that is reliable and relevant.

Relying on a Ninth Circuit case collecting these Supreme Court cases, Alley argues that a defendant's rights are violated any time a state evidentiary ruling excludes a piece of evidence critical to the defense. *See DePetris v. Kuykendall*, 239 F.3d 1057, 1062 (9th Cir. 2001) ("The Supreme Court has made clear that the erroneous exclusion of critical, corroborative defense evidence may violate both the Fifth Amendment due process right to a fair trial and the Sixth Amendment right to present a defense."). *But see LaGrand v. Stewart*, 133 F.3d 1253, 1266 (9th Cir. 1998) ("These cases, taken together, stand for the proposition that states may not impede a defendant's right to put on a defense by imposing mechanistic (*Chambers*) or arbitrary (*Washington* and *Rock*) rules of evidence.").

However, the evidence excluded in this case did not take the legs out from under Alley's defense. His defense was based on the fact that he suffered from multiple personality disorder, and, among other evidence, Alley presented two doctors who testified to that. Both discussed Alley's condition in detail and supported their conclusions with extensive discussion of Alley's case, his childhood, and his adult life.

Further, Alley does not offer a challenge to the validity of the trial court's concern that the videotape evidence was potentially confusing and unreliable. The fact that the doctors were not permitted to show or refer to in court the details of the raw data upon which they based their opinion, because the state court reasoned that the data would be too confusing and unreliable, may or may not have been error. However, the

---

this contention.

review a district court's decision not to conduct an evidentiary hearing for an abuse of discretion. *Lott v. Coyle*, 261 F.3d 594, 602 (6th Cir. 2001).

The only basis Alley offers for overturning the district court's decision is his contention that he merits an evidentiary hearing based on the Supreme Court's decision in *(Michael) Williams v. Taylor*, 529 U.S. 420 (2000), which was decided after the district court's decision in the present case. However, *Williams* is inapplicable to Alley's case; accordingly, the district court did not abuse its discretion in deciding not to conduct an evidentiary hearing on this issue.

If a habeas petitioner has "failed to develop the factual basis of a claim in State court proceedings," he can only get an evidentiary hearing in federal district court on that claim in extremely narrow circumstances. 28 U.S.C. § 2254(e)(2). The petitioner must show that:

(A) the claim relies on--
(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

*Ibid*. However, in *Williams*, the Court held:

Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is *lack of diligence*, or some greater fault, attributable to the prisoner or the prisoner's counsel.

*Williams*, 529 U.S. at 432 (emphasis added). Accordingly, the Court held that petitioners need not meet the strict requirements for an evidentiary hearing set out in § 2554(e)(2)

in cases where the failure to develop the necessary factual basis of a claim in state court was not due to a lack of diligence on the petitioner's part. *Ibid.* The Court went on to explain that whether a petitioner exercised the diligence necessary to preserve a claim "depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Id.* at 435.

In *Williams*, the prosecutor at trial had represented a juror in her divorce proceeding, but neither the juror nor the prosecutor spoke up at *voir dire* when the jurors were asked if they knew any of the lawyers involved. *Id.* at 440-41. Williams's attorneys did not find out about this until the federal habeas stage; however, the Court held that Williams was entitled to a hearing on the claim, because the fact that the evidence was not developed earlier was solely the fault of the reticent juror and prosecutor. *Id.* at 442-43. Williams, the Court held, had not exhibited a "lack of diligence" with respect to the claim. *Id.* at 437.

Contrary to the petitioner in *Williams*, who had no reason to suspect that the juror would know the prosecutor and thus potentially be biased, Alley had *every reason* to suspect that Judge Axley was allegedly biased against him. Indeed, as the district court in this case pointed out, "judicial bias has been the petitioner's watchword ever since he was convicted." *Alley*, 101 F. Supp. 2d at 618. Alley alleged judicial bias as a central issue in his first state post-conviction petition. Alley got an evidentiary hearing on this issue, among others, when the court of appeals vacated Judge Axley's denial of Alley's post-conviction petition and remanded his case to a new judge. At that hearing, Alley raised the five claims of judicial bias discussed above and presented testimony and evidence to support those claims. The Court in *Williams* held that whether a petitioner was sufficiently diligent to preserve a claim "depends upon whether the prisoner made a reasonable attempt, *in light of the information available at the time*, to investigate and pursue claims in state court." *Id.* at 435 (emphasis added). Given Alley's awareness of alleged

confession deprived him of a fair trial." *Id.* at 690 (citing *Chambers*, 410 U.S. at 302-03).

In *Rock*, the Court wrote that a "State's legitimate interest in barring unreliable evidence does not extend to *per se* exclusions that may be reliable in an individual case." 483 U.S. at 61. The Court cited *Washington* and *Chambers* and held that "restrictions of a defendant's right to testify may not be arbitrary or disproportionate to the purposes they are designed to serve." *Id.* at 55-56.

Finally, in *Scheffer*, the Court considered a blanket rule of evidence in military courts that excluded all polygraph evidence. 523 U.S. at 308. The Supreme Court upheld even this blanket rule, because it did not eviscerate the defendant's defense. *Id.* at 314-15. Though *Scheffer* is not directly relevant in this case because it came out long after the state court decisions at issue in Alley's petition, the *Scheffer* Court reconfirmed that application of evidentiary rules "do[es] not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Id.* at 308 (quoting *Rock*, 483 U.S. at 56).

In short, the state court's exclusion of Alley's videotape evidence was not contrary to the clearly established law of the cases Alley cites, because the exclusion was not based on an arbitrary, mechanistic, or per se application of the state's evidentiary rules and it was not disproportionate to the purposes behind it. It was clearly not mechanistic or per se, as the court made an individual determination – after watching the videos and based on the facts specific to Alley's case – that the likely prejudice from admitting the tapes outweighed their probative value. It was not arbitrary, as the ruling applied to both the prosecution and the defense.[4]

---

[4]Alley contends, without reference to specific examples that the ruling was arbitrary, in that prosecution witnesses were permitted to refer to the videotapes in ways that defense witnesses were not. Petitioner's Brief at 53-54. However, a review of the record simply does not support

petitioner's due process rights are violated *any time* a state court excludes evidence that the petitioner believes is the centerpiece of his defense. Instead, the cases Alley cites stand for the more limited proposition that a defendant's due process rights are violated when a state court excludes important evidence on the basis of an arbitrary, mechanistic, or per se rule, or one that is disproportionate to the purposes it is designed to serve.

In *Washington*, a Texas prisoner was not permitted at trial to present the testimony of a co-conspirator that tended to show that he was innocent because of a Texas statute that prohibited co-conspirators from testifying for each other, although they were permitted to testify for the prosecution. 388 U.S. at 16-18. The Supreme Court reversed the prisoner's conviction on the ground that Texas's rule "arbitrarily" deprived him of his right to present witnesses in his defense. *Id.* at 23.

In *Chambers*, the Supreme Court reversed a Mississippi state court conviction when, on the basis of the state's hearsay rule, the state court refused to admit testimony that someone else had committed the crime. 410 U.S. at 289-90. The Court noted that the proffered testimony was trustworthy and admissible under a common exception to the hearsay rule not adopted in Mississippi, and wrote: "That testimony also was critical to Chambers' defense. In these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied *mechanistically* to defeat the ends of justice." *Id.* at 302 (emphasis added).

In *Crane*, a state court, after holding that a defendant's confession was voluntary, excluded all evidence with respect to the circumstances under which the confession had been attained, even though the circumstances called into question the confession's credibility. 476 U.S. at 684-86. The Court reversed the conviction, noting that "the blanket exclusion of the proffered testimony about the circumstances of petitioner's

---

judicial bias on the part of Judge Axley, and, indeed, the fact that Alley received an evidentiary hearing in state court, Alley should have conducted further investigation at that time. "[I]n light of the information available at the time," Alley can be credited with the responsibility to have come up with these additional bases earlier. *Ibid.*

Accordingly, the rule set out in *Williams* does not save Alley from the strict requirements for an evidentiary hearing set out in § 2254(e)(2). *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) (explaining that *Williams* makes § 2254(e)(2) inapplicable when the petitioner exercised the necessary diligence to develop the factual record in state court); *Greer v. Mitchell*, 264 F.3d 663, 680-81 (6th Cir. 2001) (same). Therefore, since Alley does not even contend that he can fulfill the requirements for an evidentiary hearing set out in § 2254(e)(2), the district court certainly did not abuse its discretion in refusing to hold one.

### *Ex Parte Contact Claims*

In addition to arguing that Judge Axley's alleged ex parte contacts with the jurors showed judicial bias, Alley also contends that the alleged contacts violated Alley's constitutional right "to personal presence at all critical stages of [his] trial." *Rushen v. Spain*, 464 U.S. 114, 117 (1983). As the district court pointed out, Alley procedurally defaulted this claim by failing to raise it in the state court. *Alley*, 101 F. Supp. 2d at 614-15.

Just as in the previous issue, Alley does not argue cause and prejudice or miscarriage of justice to excuse his default, but instead argues that he merits an evidentiary hearing on the matter, pursuant to *Williams*, 529 U.S. at 432. Just as in the previous issue, *Williams* does not help Alley, because he failed to exhibit the necessary diligence in attempting to develop the factual record in state court. *Id.* at 435.

First, as stated above, Alley was on notice with regard to alleged improper conduct by Judge Axley at the time of his state post-conviction proceedings, and he received an

evidentiary hearing on the issue. *See, e.g., Alley*, 958 S.W.2d at 147-49. It would, therefore, have been reasonable for Alley to have inquired further with regard to the judge's actions during his trial.

More importantly, however, Alley was on notice about potential irregularities with respect to the jury. He argued in his state post-conviction case that, during his trial, the victim's family had access to a private hallway that led only to Judge Axley's chambers and the jury room. *Alley*, 958 S.W.2d at 149. Indeed, Alley's trial counsel testified at the evidentiary hearing held by the state trial court post-remand that the victim's father "was going back in towards the back where nobody but the judge and the jury stays" throughout the trial. Alley's trial counsel makes the same allegation in an affidavit submitted to the district court along with Alley's federal habeas petition.

Since Alley's trial counsel was both aware of, and alleging, the possibility of contact between the victim's family and the jury during trial, Alley's failure to interview any jurors before the federal habeas stage does not constitute "a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Williams*, 529 U.S. at 435. It is, therefore, clear that Alley did not make the diligent effort required by *Williams* to develop in state court the factual basis for his ex parte claim; for this reason, Alley can not avoid the requirements for an evidentiary hearing set out in 28 U.S.C. § 2254(e)(2). Since Alley is unable to fulfill the requirements of that section, we must affirm the district court's denial of Alley's request for an evidentiary hearing on this issue as well.

### *Exclusion of Evidence at the Guilt Phase*

Alley contends that the state trial court denied him the ability to present a full defense, in violation of his rights to

however, the Tennessee court rejected this contention, noting that the trial court had weighed the probative value of the tapes in question against its prejudicial effect. *Alley*, 776 S.W.2d at 516.

Alley's argument to this court, put simply, is that his due process rights were violated by the trial court's exclusion of the hypnosis tapes, because the interview contained therein was the basis for his doctors' opinions that he suffered from multiple personality disorder. As such, Alley contends that the tapes were the centerpiece of the key issue at trial. Without being able to show the tapes to the jury or refer to the actions or words contained therein, Alley argues that his defense was eviscerated. Further, Alley points out that the prosecution was able to cross-examine his doctors and call their own experts in order to call into doubt the verity of the alleged multiple personality manifestations, and his doctors could not refer to specifics of the tapes in order to bolster their views.

In support of his argument, Alley cites Supreme Court case law for the proposition that a defendant's due process rights are violated when a trial court excludes from the jury's consideration evidence that is vital to the defendant's defense. *See, e.g., Rock*; *Crane v. Kentucky*, 476 U.S. 683 (1986); *Chambers v. Mississippi*, 410 U.S. 284 (1973); *Washington v. Texas*, 388 U.S. 14 (1967). The Supreme Court has written of these three cases: "The exclusions of evidence that we declared unconstitutional in those cases significantly undermined fundamental elements of the accused's defense." *United States v. Scheffer*, 523 U.S. 303, 315 (1998). Alley claims that he merits habeas relief, because the trial court's exclusion of the interview tapes was contrary to this clearly established Supreme Court law.

Keeping in mind the strictures of AEDPA, it is clear that the Tennessee Supreme Court's decision in this case was neither contrary to, nor an unreasonable application of, clearly established Supreme Court case law. The Supreme Court cases Alley cites do not stand for the proposition that a

of law and recognized no limitations on his behavior.  Battle stated that it was his opinion that Alley suffered from the disorder at the time of the murder.  Battle further testified that there was evidence tending to suggest that Power was in control at the time of the murder, including the fact that the nature of the crime fit more with Power's personality than it did with Alley's.  However, Dr. Battle said that he could not be sure that an alternate personality was in control during the murder.  For this reason, on cross-examination, Dr. Battle admitted that he could not support an insanity defense in Alley's case.

On direct appeal, the Tennessee Supreme Court rejected Alley's contention that the trial court had erred in excluding the tapes.  The court held that

> audio or video tapes recording a defendant's statements and conduct while under hypnosis or truth serums, when offered as evidence of the basis of an expert's opinion as to the defendant's mental condition, may be admitted or excluded in the exercise of the trial court's discretion after weighing the probative value of the tape as part of the basis for the expert's opinion, against the risk that the tape might confuse or mislead the jury or be improperly considered as independent proof of the facts recited and shown therein. Where the tapes are not admitted the admission of testimony of the details of what the defendant said while under hypnosis or truth serum is likewise within the trial court's discretion.

*Alley*, 776 S.W.2d at 515-16.  After viewing the tapes, the court held that the trial judge had not abused his discretion.  *Id.* at 516.

The Tennessee court also rejected Alley's contention that the trial judge violated the rule enunciated in *Rock v. Arkansas*, 483 U.S. 44 (1987).  In *Rock*, the Supreme Court held that a defendant's due process right to testify was violated by a state per se rule excluding all hypnotically refreshed testimony.  *Id.* at 56.  Alley had argued that the trial judge in his case had effectively instituted such a per se rule;

due process and confrontation,[2] when the court refused to admit into evidence videotaped interviews of Alley while under hypnosis and Sodium Amytal.[3]

Alley's defense at trial was that he was insane at the time of the murder, because he suffered from multiple personality disorder (also called dissociative identity disorder). The most favorable medical testimony to this effect came from psychologist Dr. Allen Battle and psychiatrist Dr. Willis Marshall, both of whom based their diagnoses on interviews that Dr. Battle had conducted of Alley while under hypnosis. Dr. Battle had videotaped these interviews, and Dr. Marshall – who was not present during the interviews – based his conclusion on a viewing of the tapes.

The prosecution moved for the tapes to be excluded, and the district court heard testimony on the issue outside of the jury's presence. Dr. Battle testified that hypnosis was one of the methods of choice in diagnosing multiple personality disorders, and that he had conducted the taped interviews in accordance with recognized principles in the field. Dr. Battle testified that the jury would benefit from viewing the tapes, because it would help the jury to understand his diagnosis.

---

[2]Alley argues before this court that the state trial judge's evidentiary ruling violated his rights under the Confrontation Clause.  U.S. Const. amend. VI.  However, Alley has procedurally defaulted this claim by failing to raise it before the state courts in the same way that he procedurally defaulted the judicial bias claims he failed to raise in state court.  *Seymour*, 224 F.3d at 549-50.  Accordingly, we will focus on Alley's due process claim.

[3]Alley alleges that the exclusion from evidence of his Sodium Amytal interviews violated his constitutional rights.  However, Alley's brief focuses solely on the import of the hypnosis sessions.  We will, therefore, limit our discussion similarly; since we hold that the trial judge did not violate Alley's due process rights by excluding the hypnosis tapes, which Alley contends were central to his defense, we are safe to assume that the judge did not violate Alley's rights by excluding the Sodium Amytal tapes, about which Alley makes no such claim.

Dr. William Gentry testified for the state at the *in limine* hearing and testified that juries tend to be confused by and place too much weight upon hypnotic testimony. He testified that people can lie under hypnosis, and that the hypnotic state produces different levels of consciousness that can only be understood from a clinical perspective, not from a lay perspective.

The trial judge viewed the tapes and found them to be sensational, unreliable, and likely to confuse the jury. He also found that the tapes elicited no facts about what happened on the night of the murder. He weighed the probative value of their use against the risk that the tapes might confuse or mislead the jury and granted the state's motion to exclude them. Specifically, the judge ruled that the tapes could not be shown to the jury, and that "statements or words and actions of the defendant while under hypnosis [could not] be related to the jury by a witness." However, the judge held that witnesses could testify that the interviews were conducted, and they could express their opinions as to whether multiple personalities were present during the interviews.

Drs. Marshall and Battle did just that. Dr. Marshall testified that Alley suffered from multiple personality disorder, and he stated that Alley exhibited at least two alternate personalities (one called "Power" or "Death," and a female named "Billie"). Marshall testified that he based this opinion on his viewing of the two videotaped hypnosis interviews, during which "Power" emerged. Marshall stated that it was his opinion, based on his viewing of the videotaped interviews, that Power was legally insane. Dr. Marshall further testified, both on the basis of the videotaped interviews and other interviews Dr. Marshall had conducted with Alley, that there was evidence that Power was in control at the time of the murder.

Testifying prior to the trial court's ruling excluding the videotape evidence, Marshall described to the jury a portion of one of the hypnosis interviews, during which Alley struggled with himself, spoke in a whisper, and repeatedly

tried to choke himself. Marshall explained that Alley says he feels one of the others choking him whenever he tries to speak about his alternate personality, Billie.

In addition to discussing the videotapes, Dr. Marshall described in detail the ways in which his alternate personality diagnosis was consistent with various aspects of Alley's case. First, Marshall explained that during both an initial interview and the Sodium Amytal interviews Marshall had conducted, Alley spoke of both Death and Billie being in the car with him the night of the murder. Marshall also testified at length about Alley's childhood and adult life, and he explained how both were consistent with having a multiple personality disorder. Indeed, he explained, Alley's brother – observing Alley's strange actions and character – had come to the conclusion several years earlier that Alley had multiple personalities. Finally, Marshall detailed how Alley had suffered from memory lapses and distortions throughout most of his life, and he explained that this "is probably the most common sign of multiple personality."

For his part, Dr. Battle testified that he had treated more than a dozen cases of multiple personality disorder throughout his career. Dr. Battle then explained that he had hypnotized Alley on several occasions, and that, based on those interviews, it was his opinion that Alley suffered from the condition. Like Dr. Marshall, Dr. Battle testified about Alley's childhood, and how he believed experiences during that time led to the development of alternate personalities. He also testified about Alley's memory loss and the significance he saw in that.

Dr. Battle talked about two alternate personalities. Battle explained that Alley was aware of the existence of Billie, an alternate personality that stemmed from Alley's troubled childhood. However, Battle testified at greater length regarding the second alternate personality, Power. Battle testified to having had contact with Power through the hypnosis sessions, and he testified that Power was psychotic. He explained that Power claimed not to be bound by the rule